UNITED STATES, Appellee

v

FERNANDO H. MARTINEZ, Airman Third Class, U. S. Air Force, Appellant

16 USCMA 40, 36 CMR 196

No. 18,928

February 25, 1966

*Major Robert S. Amery* argued the cause for Appellant, Accused. With him on the brief was *Colonel Joseph Buchta.*

*Lieutenant Colonel David B. Stevens* argued the cause for Appellee, United States. With him on the brief was *Colonel Emanuel Lewis.*

## Opinion of the Court

QUINN, Chief Judge:

Airman Robert E. Reed awoke about 3:00 a.m., November 21, 1964, to discover an intruder in his room "going through . . . [his] clothes." The intruder fled, but Reed gave chase and caught him about two hundred yards from the barracks. The intruder was the accused. Subsequent investigation led to the filing against him of four specifications of larceny, and one specification of housebreaking, in violation of Articles 121 and 130, Uniform Code of Military Justice, 10 USC §§ 921 and 930, respectively. In due course, the charges were referred to a general court-martial for trial. The accused was convicted and sentenced to a bad-conduct discharge, confinement at hard labor for twelve months, and accessory penalties. With some modification of the findings, the convening authority approved the conviction and the sentence. On this appeal, the accused contends his locker was searched without probable cause, and the results of the search should not have been admitted in evidence against him.

When a search is made upon the au-

**41**

thority of a competent officer, it must appear that he granted the authorization with knowledge of facts sufficient to show probable cause for the search. United States v Dollison, 15 USCMA 595, 36 CMR 93; United States v Westmore, 14 USCMA 474, 34 CMR 254. Information indicating merely a possibility of guilt is insufficient to justify issuance of authority to search. United States v Battista, 14 USCMA 70, 33 CMR 282. In addition, even if granted on probable cause, the authorization to search cannot extend to a general exploratory search for evidence, but must define with reasonable specificity things that may be properly seized. United States v Hartsook, 15 USCMA 291, 35 CMR 263. Applying these general principles to the circumstances of this case, it is apparent that the search was predicated upon a satisfactory showing of probable cause and was properly limited.

Lieutenant Colonel Wendell W. Sanders, the accused's squadron commander, was at the Base Police Investigations office when asked for permission to search the accused's personal effects. Apparently, he had been called there after the accused had been apprehended in the flight from Airman Reed's room. Staff Sergeant John H. Reinert, the noncommissioned officer in charge of the Base Police Investigations office, requested the permission to search. He informed Colonel Sanders of the "incident involving Airman Reed." He also told him that he "had three cases that fit the same M. O. [*modus operandi*]" as that of the accused in the Reed incident. All these cases had occurred in the "particular" area of Reed's and the accused's barracks, within a period of less than a month. While it does not appear that Sergeant Reinert explained the details of the *modus operandi* to Colonel Sanders, his opinion as the noncommissioned officer in charge of the Base Police Investigations could properly be considered. Cf. Aguilar v Texas, 378 US 108, 114, 12 L ed 2d 723, 84 S Ct 1509 (1964). Similarity in the method of operation indicates with a fair degree of probability that the person who committed one offense committed the others. See United States v Dickenson, 6 USCMA 438, 463, 20 CMR 154. The probability is increased when all the offenses are perpetrated within the same area and in a relatively brief period of time. United States v Drew, 15 USCMA 449, 35 CMR 421. Under the circumstances, there was ample evidence to support Colonel Sanders' conclusion that probable cause for a search existed.

That there was a proper delineation of the scope of the search may also be reasonably inferred from Sergeant Reinert's testimony. He testified that he apprised Colonel Sanders not merely that he "had three cases that fit the same M. O." but, also, that he "relate[d] . . . the other instances" to the Colonel. We conclude, therefore, that Colonel Sanders was "fully aware of the items sought by the searches" at the time he authorized the search. United States v Drew, supra, page 455.

As is obvious from our discussion of the evidence, the task of decision in a case such as this would be simplified if the authority to search was in writing. The writing itself would spell out the facts upon which the authorization is based, and it would also enumerate the articles to be seized. There would be, therefore, no necessity for extensive testimony, months after the event, as to the circumstances relating to the scope of the authority to search. United States v Hartsook, supra. It is also worth noting that the failure at trial to object to evidence obtained as a result of a search normally constitutes a waiver of any irregularity as to the search. United States v Webb, 10 USCMA 422, 27 CMR 496. All the circumstances surrounding the search should be developed at the trial level, where the essential witnesses are directly available and conflicts in their testimony, if any, may be resolved, with due re-

gard to the witnesses' "accuracy and retentiveness of . . . memory." Manual for Courts-Martial, United States, 1951, paragraph 153a.

The decision of the board of review is affirmed.

Judges FERGUSON and KILDAY concur.