UNITED STATES, Appellee,

v.

Private (E–2) Christopher J. FISHER, SSN 289–56–3106, United States Army, Appellant.

CM 435445.

U. S. Army Court of Military Review.

21 April 1978.

Frank E. Steel, Jr., Esquire, and Captain Larry D. Anderson, JAGC, were on the pleadings for appellant.

Lieutenant Colonel R. R. Boller, JAGC, Captain Laurence M. Huffman, JAGC, and Captain Paul W. Jacobson, JAGC, were on the pleadings for appellee.

Before JONES, MITCHELL and De-FORD, Appellate Military Judges.

OPINION OF THE COURT

MITCHELL, Judge:

The appellant was convicted, contrary to his pleas, of possession of amphetamines

and a hypodermic syringe with needle in violation of Article 92, Uniform Code of Military Justice (UCMJ) (10 U.S.C. § 892). He received an approved sentence that included a bad-conduct discharge, confinement at hard labor for nine (9) months, and reduction to the grade of Private (E–1).

Our review of the appellant's case is pursuant to Article 66, UCMJ.

The operative facts with which we are concerned are that the Criminal Investigation Command in Germany had received information from certain informants that the appellant and a Sergeant Screen, a fellow soldier, were selling illegal drugs and narcotics. An informant had advised the agents that the appellant had negotiated a purchase of methamphetamines from the wife of Sergeant Screen. The agents placed for a period of twenty-four hours a surveillance on the home occupied by Sergeant Screen and his wife. During the surveillance, agents observed the appellant entering and departing the premises on numerous occasions. Following the surveillance period, the agents searched Sergeant Screen's home and confiscated drugs and a cache of money found on the premises.

Following the seizure of the drugs and money, the senior agent in charge of the surveillance team directed Sergeant Williamson (an agent) to locate and arrest the appellant for conspiracy.[1] Agent Williamson located the appellant at his barracks and arrested him as ordered. A search of appellant's person, following his arrest, resulted in the seizure of a packet strapped to his leg containing amphetamines as well as cotton balls and a syringe with a needle.

Before us, appellate defense counsel argue that the apprehension was unlawful and therefore the fruits of the apprehension were inadmissible. We disagree and affirm.

■ A search and seizure conducted as an incident of lawful apprehension is proper. Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 152; *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *United States v. Kinane*, 1 M.J. 309 (C.M.A.1976); *United States v. Thomas*, 16 U.S.C.M.A. 306, 36 C.M.R. 462 (1966); *United States v. Burnside*, 15 U.S.C.M.A. 326, 35 C.M.R. 298 (1965); *United States v. Ross*, 13 U.S.C. M.A. 432, 32 C.M.R. 432 (1963). Thus we must first determine the propriety of the apprehension.

■ Article 7(b), UCMJ, provides:

"Any person authorized under regulations governing the armed forces to apprehend persons subject to this chapter or to trial thereunder may do so upon reasonable belief that an offense has been committed and that the person apprehended committed it." *See also* Manual for Courts-Martial, *supra*, paragraph 19.

Reasonable belief is defined in terms of probable cause:

"The crucial element in a search question is the existence of probable cause. Without probable cause an arrest without a warrant is invalid and necessarily a search conducted as an incident to the arrest is also invalid." *United States v. Ness*, 13 U.S.C.M.A. 18, 32 C.M.R. at 22 (1962); *see also United States v. Weshenfelder*, 20 U.S.C.M.A. 416, 43 C.M.R. 256 (1971); *United States v. Herberg*, 15 U.S. C.M.A. 247, 35 C.M.R. 219 (1965).

Probable cause to apprehend

"is not to be evaluated from a remote vantage point of a library, but rather from the viewpoint of a prudent and cautious police officer on the scene at the time of [apprehension]. The question to be answered is whether such an officer in the particular circumstances, conditioned by his observations and information, and guided by the whole of his police experience, reasonably could have believed that a crime had been committed by the person to be [apprehended]." *Jackson v.*

---

[1] It was stipulated at trial that Agent Williamson, if present, would testify that he was a member of the drug team involved in the raid on the Screen quarters and that even though he had not been briefed and did not know the specifics he did know that Fisher was involved in some dealings with the informant.

*United States*, 112 U.S.App.D.C. 260, 262, 302 F.2d 194, 196 (1962); *see Warden, Maryland Penitentiary v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *United States v. Summers*, 13 U.S.C.M.A. 573, 33 C.M.R. 105 (1963).

Only the probability, and not a prima facie showing of criminal activity is the standard of probable cause.[2] This standard is much less rigorous than that governing the admissibility of evidence at trial.[3] In judging probable cause the authorities are not to be confined by niggardly limitations or by restrictions on the use of their common sense[4] and their determination of probable cause should be paid great deference by reviewing courts.[5] As the Supreme Court has stated, the standard is that of ordinary prudence:

"In dealing with probable cause . . . we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

When probable cause is predicated solely upon information supplied by an informer the scope of the inquiry is broadened. *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). In *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the Supreme Court announced the test to be used when informers are involved. There must be demonstrated a sufficient underlying basis for the information provided; and the reliability of the informant must be established. This test, although established for authorizing a

search, has been adopted by the military to apply equally in evaluating probable cause to apprehend.[6] Military law does not prescribe a more strict rule than the Constitution authorizes.

The *Aguilar* test has been made much more flexible, however, by the Supreme Court's decision in *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). There the Court made it clear that the *past* reliability of the informant need not be demonstrated and allowed for the establishment of *present* reliability based upon *corroboration* of the information supplied. *Id.* at 581, 91 S.Ct. 2075.[7] (Emphasis supplied.)

This Court has held that the reliability of an eyewitness may be presumed, even though the informant's reliability has not been tested previously. *United States v. Dingwell*, 1 M.J. 594 (A.C.M.R.1975) (and cases cited therein at n.5). This analysis comports with the Supreme Court's expression on present reliability in *Harris*. The reliability of the informers' information in the case before us, when tested and interpreted in a commonsense and realistic fashion, without applying the technical requirements of elaborate specificity once exacted under common-law pleadings,[8] is, in our view, established by sufficient corroboration.

The arresting authorities had these facts before them at the time the accused was apprehended:

1. The Criminal Investigation Command (CID) had received information from certain informants that the accused and Sergeant Screen were selling illegal drugs and narcotics;

---

2. *Beck v. Ohio*, 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142, 147 (1964).

3. *McCray v. Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 1062, 18 L.Ed.2d 62, 67 (1967).

4. *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 688 (1965).

5. *Jones v. United States*, 362 U.S. 257, 270–271, 80 S.Ct. 725, 735–736, 4 L.Ed.2d 697, 707–708, 78 A.L.R.2d 233 (1960).

6. *United States v. Llano*, 23 U.S.C.M.A. 129, 48 C.M.R. 690 (1974); *United States v. Scarbor-*

*ough*, 23 U.S.C.M.A. 51, 48 C.M.R. 522 (1974); *United States v. Weshenfelder*, 20 U.S.C.M.A. 416, 43 C.M.R. 256 (1971).

7. *See also Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

8. Per Burger, Chief Judge, Black, Judge, Stewart, Judge, and Blackmun, Judge, in the majority opinion, *United States v. Harris, supra.*

2. An informer was personally negotiating to purchase drugs from the accused and Mrs. Screen;

3. During the 24 hour surveillance by the CID of the Screen home the accused was seen entering and leaving on numerous occasions;

4. The accused was present in the Screen home when a CID informant made a controlled purchase from the wife;

5. A legal CID search of the Screen home turned up a large quantity of drugs and a cache of money;

6. The CID ordered the accused's apprehension immediately following the house search and discovery of the positive evidence of drugs and stashed money at the site of the accused's alleged illegal operations.

We find that these corroborating factors supply the indicia of credibility sufficient to support a finding of probable cause to apprehend the accused. *United States v. Harris, supra.*

Accordingly, we find no prejudicial error in the admission into evidence of the items seized after the search of his person.

The findings of guilty and the sentence are affirmed.

Senior Judge JONES concurs.

DeFORD, Judge, dissenting:

I am unable to find that probable cause existed in the record of trial to warrant the appellant's arrest in this case. In my view, the evidence of record only substantiates the appellant's association with the Screens during the police surveillance of the Screen premises. Such association has not, in the past, been a basis for search, seizure, or arrest by police officers.[1]

I do not disagree with the basic law of arrest and the definitions of probable cause as set forth in the majority opinion. I do disagree with the views of the majority concerning the facts of this case and their interpretation of the impact of the opinion in *United States v. Harris*[2] on prior precedent concerning police officer's use of hearsay information provided by informants.

The issue in this case was raised by the trial defense counsel's objection to the Government's efforts to introduce into evidence the amphetamines seized from the person of the appellant. At the evidentiary hearing on the foregoing motion, the prosecution established through the testimony of Special Agent James Crimmins, United States Army Criminal Investigation Command (CID), that he was in charge of a 24 hour photo surveillance of the apartment of one Sergeant Screen in Viernheim, Germany. Crimmins stated that "we" received information previously that Private Fisher was dealing in controlled substances in conjunction with Sergeant Screen.

During the surveillance, Fisher was seen coming and going from the apartment on numerous occasions. Crimmins further stated that "we" had received information "from our informant working that case" that he (the informer) had negotiated with Private Fisher and Sergeant Screen's wife for the purchase of a quantity of methamphetamine. The prosecutor asked Agent Crimmins what additional information he possessed concerning the appellant. He reiterated that the "only previous information that was related to me by investigators that had previous knowledge or that they had acquired through other informants that Private Fisher was in fact dealing."[3]

1. *See United States v. Pope*, 3 M.J. 1037 (A.F.C. M.R.1977), and the cases cited therein.

2. 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).

3. It is obvious that Agent Crimmins was not certain of his source. He apparently not only did not know whether the information regarding appellant's previous activities had been acquired through informants of questionable veracity or whether the agents had acquired some information concerning the appellant. In any case, if the information was supplied by agents there must not have been much information available or the CID would have taken adequate efforts to document the appellant's prior unlawful acts if, in fact, there were some. It does not appear that the appellant had an established reputation as a dealer or possessor of illegal drug substances. In any event, his state-

Between 2:00 and 2:30 P.M. in the afternoon of 30 June, the agents entered the Screen apartment pursuant to a search warrant, and seized a quantity of drugs and money. Agent Crimmins directed another agent, a Sergeant Williamson, to locate the appellant and arrest him for conspiracy. Williamson carried out his orders, located the appellant at his barracks, and effected the arrest. A search following the arrest produced the amphetamines which were the subject of the charges against the appellant.

No other evidence was offered to support the appellant's arrest nor were any other facts shown with regard to the activities of Sergeant Screen and his wife.

Military law in the areas of probable cause to arrest and search and seizure has generally followed the opinions of the Supreme Court of the United States.[4]

Paragraph 152 of the Manual[5] concerning probable cause and the use of hearsay information states "the authority ordering the search has been apprised of some of the underlying circumstances from which the informant concluded that "the items in question were where he claimed they were and some of the underlying circumstances from which the authority requesting permission to search concluded that the informant, whose identity need not be disclosed, was credible or his information reliable." The foregoing language is reported virtually verbatim from *Aguilar v. Texas.*[6]

An examination of the principal cases concerning the use of informer's hearsay information in probable cause determinations to arrest or to search has produced at best, what might be termed "a sea of shifting sands."[7]

In *Nathanson*, the Supreme Court held that an affidavit which only set forth statements of reputation, suspicion and belief without supporting and corroborating facts was insufficient to show probable cause to search.

In *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), the Court held that an affidavit that set forth hearsay reports of reliable information of selling heroin was sufficiently corroborated where the suspects were well known to the police as heroin users. Their use of drugs had been previously admitted to police and other information known to police corroborated the hearsay information provided by the informants whose reliability had been ascertained on previous occasions. It is noted the Court's determination of probable cause in this case was based upon a "substantial basis" for crediting the hearsay report.

In *Draper*, a police officer's probable cause to arrest was sustained where the informant's information concerning the location of the suspect at a certain time, his appearance, clothing, physical description and peculiarity of his method of walking was corroborated by police officers prior to his arrest. Again, corroboration of the reported information provided a "substantial basis" for crediting the reliability of the hearsay information.

In 1964, the Supreme Court enunciated the well known "Aguilar two-prong test" which as noted, is set forth in paragraph 152 of the Manual. The affidavit there set forth reliable information from a credible person but as none of the underlying circumstances were set forth, the Court ruled

---

ment leaves the record subject to the necessary inferences that the information may have been the product of mere suspicion or gossip.

**4.** *See United States v. Kinane*, 1 M.J. 309 (C.M.A.1976).

**5.** Manual for Courts-Martial, United States, 1969 (Revised edition).

**6.** 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

**7.** *See United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas, supra; Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *Nathanson v. United States*, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933).

that the affidavit for a search warrant was a mere affirmation on suspicion and belief.[8]

In *Spinelli v. United States, supra,* a case similar to that which is before us, the Supreme Court again struck down a search warrant in which hearsay information was reported that Spinelli was operating a gambling handbook and accepting wagers from an apartment. Spinelli was seen entering the premises on numerous occasions and federal officers ascertained that the apartment contained two telephones and were cognizant of Spinelli's reputation as a gambler.

The Court held that Spinelli's entrance in the apartment and the fact that two telephones were located in the apartment were "innocent seeming activity." The federal officers' knowledge of Spinelli's reputation was considered "no more than a bold and unilluminating assertion of suspicion" and that the affidavit failed to pass either prong of *Aguilar, supra,* as the informant did not disclose how he gained the information he reported.

Finally, in *Harris,* the Supreme Court evidenced its dissatisfaction with the rule enunciated in *Aguilar* and the results reached in *Spinelli.* There, federal officers received a search warrant which set forth that Harris had a known reputation of over four years standing as a trafficker in non-tax paid distilled spirits. The officers had numerous reports of Harris' illegal activities, a constable located a cache of illicit whiskey on premises under Harris' control and a hearsay report from a "prudent" person who had purchased whiskey from Harris at the residence in question over a two-year period and most recently as within the past two weeks. The Court held that there was a "substantial basis" for crediting the hearsay report of the informant as (1) the hearsay statement of the informant was a declaration against the informant's penal interest and entitled to credibility; (2) the federal officer's knowledge of the reputation of Harris added credibility to the hearsay report and the constable's location of the illicit whiskey under Harris' control all combined to provide reliability and corroboration.

Military law appears to follow the same uncertainty as the decisions of the Supreme Court.[9]

Here, we do not have the benefit of a magistrate passing judgment on Agent Crimmins' determination of probable cause for arrest.[10]

In this case, we have one, two, or possibly three informants providing information to the CID. Crimmins testified that (1) they (CID) had received previous reports concerning the appellant's "dealing"; (2) CID had received a report that the appellant and Sergeant Screen were dealing in prohibited substances; and (3) an informant had advised that he (the informant) had negotiated the purchase of some methamphetamine.

In each of the foregoing instances, no reliability of the informants or their information is established on record nor is the date, time, or place established as when these events occurred.

As noted, Agent Crimmins himself was unaware of the actual source of the information. He believed that it was received from one of several sources.

The CID did establish that the appellant had been present at the Screens' apartment on "numerous" occasions and that illegal substances were found in that apartment. No corroboration is shown with regard to

---

8. *See* footnote 6 for citation.

9. *See United States v. Scarborough,* 23 U.S.C.M.A. 51, 48 C.M.R. 522 (1974); *United States v. Smallwood,* 22 U.S.C.M.A. 40, 46 C.M.R. 40 (1972); *United States v. Gibbins,* 21 U.S.C.M.A. 556, 45 C.M.R. 330 (1972); *United States v. Lidle,* 21 U.S.C.M.A. 455, 45 C.M.R. 229 (1972); *United States v. Weshenfelder,* 20 U.S.C.M.A. 416, 43 C.M.R. 256 (1971); *United States v.*

*McFarland,* 19 U.S.C.M.A. 356, 41 C.M.R. 356 (1970), among others.

10. *See United States v. Penman,* 16 U.S.C.M.A. 67, 36 C.M.R. 223 (1966). The case in issue provides a cardinal example of inferences being drawn, not by a neutral and detached magistrate, but by a police officer engaged in the often competitive enterprise of ferreting out crime.

the appellant's alleged acts other than mere association with Screens. I view the foregoing as no more than an innocent seeming activity which in and of itself provides no more than another example of a "bold and unilluminating assertion of suspicion." Even coupled with the knowledge that Screens were selling illegal substances, those facts do not make the appellant a seller of illegal substances in the eyes of a reasonably prudent man.

Further, I do not believe that we can ascribe credibility to the informant who allegedly negotiated a purchase of methamphetamine from the appellant and Mrs. Screen when no showing is made as to date, time, and place of that alleged transaction nor any corroboration of those facts shown from any other evidentiary source. Also, I do not believe we can credit the informant's information as describing a declaration against his penal interest as was done in *United States v. Harris, supra,* when no basis is shown as to why the informant made such a report. He may well have been paid for his activities or had some other police necessitated basis for making such a report if there was one.

Accordingly, I find there is no "substantial basis" for crediting the hearsay information in this case whether it is considered under *Jones v. United States, supra; Aguilar v. Texas, supra; Spinelli v. United States, supra;* or *United States v. Harris, supra.* I would find there was no probable cause to believe a crime was committed much less that the appellant committed it. Accordingly, there was no probable cause to arrest the appellant and the subsequent search and seizure was, in my view, illegal. I respectfully dissent.