UNITED STATES, Appellee,

v.

Ramon TEXIDOR–PEREZ, Specialist Four, U.S. Army, Appellant.

No. 37,012.
SPCM 13555.

U. S. Court of Military Appeals.

Oct. 1, 1979.

For Appellant: *Captain Kevin E. O'Brien* (argued); *Colonel Edward S. Adamkewicz, Jr., Major D. David Hostler* (on brief).

For Appellee: *Captain Stephen D. Smith* (argued); *Colonel Thomas H. Davis, Lieutenant Colonel R. R. Boller, Major Robert B. Williams* (on brief).

Opinion of the Court

COOK, Judge:

Contrary to his pleas, the appellant was convicted by a special court-martial of the possession of marijuana and an attempt to introduce marijuana into a military base, in violation of Articles 134 and 80, Uniform Code of Military Justice, 10 U.S.C. §§ 934 and 880, respectively. He was sentenced to a bad-conduct discharge, confinement at hard labor for 3 months, and forfeiture of $100.00 pay per month for 3 months. The findings and sentence were approved by the convening authority and his action was affirmed by the Army Court of Military Review. We granted review to determine whether the marijuana involved in the two offenses was properly admitted into evidence.

Trial defense counsel objected to the admissibility of the marijuana in question on the basis that it was "the product of an illegal search and seizure." Trial counsel called three witnesses to support the admissibility of the evidence. Sergeant Hathaway testified that he was the "mid-night Desk Sergeant" on the night in question. He received a telephone call from an unknown caller who told him:

> [T]hat a newer model orange and white chevy—I believe it was 6E1003 Hawaii plate would be entering post heading towards the 1st of the 19th and Quad K. He said it would be driven by two—correction, there would be two Puerto Rican males inside. The Puerto Rican males would be carrying approximately thirty bags of marihuana in the car. *He didn't state how he knew or who the occupants were by name.* [Emphasis added.]

Sergeant Hathaway proceeded as follows:

A: Once I received it I passed it on to the road shift. I passed it on to McComb Gate Guard Berthold. I explained the description of the vehicle and status of the situation, and advised him to pull a driver's license check, and a field interview card check—correction, make a field interview on him, I suggested that, I didn't tell him to do it. I also advised him, that if it came to that, he could ask the driver for permission to search the vehicle. If the driver refused that permission, to let the driver continue with his drive.

Q [Trial Counsel]: All right. Now, subject to having put this word out to the units and to the gate, as you just testified, did you receive a phone call from the gate relating to this matter, relating to this particular car?

A: Right. A short time after I put it out or I had it put out, I can't recall, maybe twenty minutes, I got a return call from McComb Gate, I'm not sure who called, I think it was Berthold again, stating that he had the car at the front gate. I again advised him of what he could do with the vehicle and what my earlier instructions were to do with the vehicle.

Specialist Four Berthold testified that he was the gate guard, and he substantiated the testimony of Sergeant Hathaway as to the information he received regarding the telephone call. When the automobile fitting the description related to him approached the gate at approximately 0510 hours, he ordered the driver of the automobile to pull over. He "asked" the driver to turn the ignition off and to show his identification card, driver's license and vehicle registration. The driver, who was identified as the appellant, complied as required.[1] Berthold asserted that he observed nothing incriminating in the automobile and returned to his station and contacted Sergeant Hathaway who advised him to "field

---

1. Appellant was not the owner of the automobile, but he was using it with the owner's permission.

interview the individuals," and let them go. At some point during the incident two additional military policemen were dispatched to the area and one of them, Specialist Four Rogers, walked with him toward the automobile. When they came within ten feet of the vehicle, Berthold observed "the driver reaching under his seat." Rogers drew his weapon and ordered the two occupants to "freeze" and place their hands on the dashboard. Berthold asserted the reason for the action was their concern that the appellant could be reaching for a weapon. The occupants were told to exit the automobile and Rogers asked the appellant for permission to search the automobile. Appellant mumbled something unintelligible and began to run from the area; appellant's companion stayed in the area as directed. Rogers gave chase and Berthold reached under the seat of the automobile. He stated his purpose was to ascertain if a weapon was present, but his efforts produced a brown bag containing the marijuana in question. The third military policeman assisted Rogers. Rogers also testified and his testimony was consistent with Berthold's version of the incident. He specifically asserted that he drew his weapon and ordered the occupants of the car to freeze because he believed the driver "could have possibly been going for a weapon of some sort."

 On appeal, the Government submits that the action of the military policemen was an investigative stop and frisk. Thus, the Government asserts that the standard for judging the appropriateness of the officers' conduct is less then probable cause to believe that appellant was engaged in criminal activity. Indeed, the United States Supreme Court held, in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), that a police officer may make an investigative stop and conduct a limited protective search on information which does not establish probable cause for an arrest. *Accord, Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *see Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). An investigative stop and frisk must be predicated on "reasonable suspicion, based on objective facts, that the individual is involved in criminal activity." *Brown v. Texas,* —— U.S. ——, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979), *citing Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979), and *United States v. Brignoni-Ponce,* 422 U.S. 873, 882–83, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). If the requisite reasonable suspicion is present, the police officer can require an occupant to exit an automobile. *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). We note that there is a conflict among the lower federal courts as to whether the officer may conduct a limited search of the automobile for weapons under the doctrine of *Terry.* Compare *United States v. Rainone,* 586 F.2d 1132 (7th Cir. 1978), *cert. denied,* 440 U.S. 980, 99 S.Ct. 1787, 60 L.Ed.2d 239 (1979), and *United States v. Green,* 151 U.S.App.D.C. 35, 465 F.2d 620 (DC Cir. 1972), *with Government of Canal Zone v. Bender,* 573 F.2d 1329 (5th Cir. 1978).

However, the Government's argument in reliance on the cited authorities has been foreclosed by the ruling of the trial judge. During his argument on the admissibility of the evidence, the trial counsel observed the following:

Now, we would maintain that apprehension was effected by the MP's when the occupants of the vehicle were ordered to freeze, placed their hands on the dash board and exited the vehicle, certainly at that time, their movements were restricted and they were under, we would argue, Your Honor, some form of apprehension.

The military judge ruled the evidence was admissible, with the following comment:

There was another person present, so, while it appears they may have been looking more for the marihuana than any weapon, I will uphold it as incident to an apprehension and a probable cause search.

 We are aware that the distinction between an investigative stop and an arrest or apprehension is not clearly defined. *See generally Dunaway v. New York,* —— U.S.

——, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *United States v. Kinane,* 1 M.J. 309 (C.M.A. 1976). In the present case, the military judge concluded that the military policemen's restraint of appellant exceeded that permissible for an investigative stop and, as his ruling is supported by the record, we will accept it for the purposes of this appeal. He sustained the search on two theories: it was incident to an apprehension and the search itself was based on probable cause. The Government also submits that the military policemen's conduct was supported by probable cause. As the offense in question was the possession of marijuana in the automobile, if the information established probable cause for the apprehension, it would also establish probable cause for the search. *See Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). However, our review of the record convinces us that the military judge erred in ruling that probable cause for the apprehension and search had been established.

 As noted in *United States v. Ness,* 13 U.S.C.M.A. 18, 23, 32 C.M.R. 18, 23 (1962), "[p]robable cause to search exists if the facts and circumstances justify a prudent man in concluding that an offense has been or is being committed." *See Dunaway v. New York, supra* 99 S.Ct. at 2254 n.9. Although a search of an automobile was involved in the present case and prior authorization to search is not required under some circumstances, such a search must, nevertheless, be based on probable cause. *Texas v. White,* 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975); *United States v. Ortiz,* 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975); *Almeida-Sanchez v. United States,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973); *Chambers v. Maroney, supra; Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Furthermore, the present case does not involve an inventory of an impounded vehicle. *See South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Cardwell v. Lewis,*

417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974); *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). Finally, the search of the automobile was not pursuant to a valid gate inspection. *See United States v. Holsworth,* 7 M.J. 184 (C.M.A. 1979); *United States v. Harris,* 5 M.J. 44 (C.M.A.1978); *United States v. Rivera,* 4 M.J. 215 (C.M.A.1978).

We, therefore, turn to the facts of the present case. An anonymous caller informed the authorities that an automobile would enter the military base and the occupants would be in possession of marijuana. He neither identified himself nor the occupants and he gave no information as to how he had acquired his knowledge. The Government concedes that this information is insufficient to establish probable cause but submits that the information was corroborated when an automobile fitting the description appeared at the gate as predicted by the caller. The Government further asserts that additional support for the search was provided when the appellant reached under the seat of the automobile. This factor would only be proper in evaluating probable cause if the initial stop of the automobile was proper. *United States v. Robinson,* 6 M.J. 109 (C.M.A.1979). We will assume for the purpose of this appeal, without deciding the issue, that there was sufficient information available for an investigative stop.[2] The standard to be applied for evaluating the existence of probable cause where an informant is involved was set out in *United States v. Lidle,* 21 U.S.C.M.A. 455, 457, 45 C.M.R. 229, 231 (1972):

When information about a possible search comes not from the personal knowledge of the one seeking the authority, the authorizing official must be given information from which he can determine, first, that the person who originated the information was reliable and, second, some of the underlying circumstances that caused the person to believe the object of the search is where he thinks it is. *United States v. Penman,* 16

---

2. We note, however, the United States Supreme Court in *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), relied on the fact that the police officer who conducted an investigative stop knew the informant who supplied the information.

U.S.C.M.A. 67, 36 C.M.R. 223 (1966); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The authorizing official cannot rest on an unexplained conclusion of even the person seeking the authority. See *Aguilar v. Texas,* supra; *Nathanson v. United States,* 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933). *A fortiori,* the authorizing official must have more than a conclusion of a third party only relayed by the person who sought the authority. *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

The Government correctly notes that probable cause may be established when some of the facts supplied by the informant are verified by the authorities. *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *United States v. McFarland,* 19 U.S.C.M.A. 356, 41 C.M.R. 356 (1970). In the present case the appearance of an automobile driven by a serviceman at a military gate does not present any evidence of criminal activity. Furthermore, the act of reaching under the seat is insufficient to establish probable cause. Indeed, although the policemen involved testified that they thought the accused was reaching for a weapon, this testimony was apparently rejected by the military judge who concluded they were searching for marijuana rather than a weapon. We are not persuaded that these factors were sufficient to provide an adequate substitute for specific information relating to the reliability of the informant and the underlying circumstances giving rise to his belief that the automobile contained marijuana. *United States v. Gamboa,* 23 U.S.C.M.A. 83, 48 C.M.R. 591 (1974); *see United States v. Llano,* 23 U.S.C.M.A. 129, 48 C.M.R. 690 (1974). As all the evidence against the appellant was a product of the search, a retrial would be inappropriate.

The decision of the United States Army Court of Military Review is reversed, and the Charges and their specifications are ordered dismissed.

Chief Judge FLETCHER and Judge PERRY * concur.